In re SADALA, Thomas F., Sadala, Barbara, Debtors.

No. 02–07006–OJ3.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

June 2, 2003.

Catherine B. Palumbo, Melbourne, FL, for debtor.

Laurie K. Weatherford, Winter Park, FL, trustee.

## MEMORANDUM OPINION DENYING SUNTRUST BANK'S MOTION FOR RELIEF FROM STAY AND GRANTING DEBTORS' MOTION FOR CLARIFICATION

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing, on March 11, 2003, on the Motion for Clarification (Doc. No. 39) filed by Thomas and Barbara Sadala, the Chapter 13 debtors in this case. The debtors seek clarification on whether they can value and strip off a second unsecured mortgage encumbering their homestead by motion, or, instead, whether an adversary proceeding is required. The dispute over whether the debtors are required to file an adversary proceeding to value and to strip off a second unsecured mortgage arose at a preliminary hearing held on November 19, 2002, on SunTrust's Motion for Relief from the Automatic Stay (Doc. No. 26) and the debtors' Response (Doc. No. 34). SunTrust sought relief from the automatic stay because the debtors' Chapter 13 plan (Doc. No. 6) valued SunTrust's secured claim at zero, included no payments to SunTrust as a secured creditor under the plan, and proposed to avoid SunTrust's second mortgage. Because SunTrust was not being treated as a secured creditor, they asked this Court to modify the automatic stay to allow the bank to pursue their state court rights against the debtors' home.

The debtors value their home at $81,000. SunTrust holds both the first and second mortgages encumbering the debtors' home. The first mortgage has a balance of $83,321.62; the second mortgage has a balance of $16,610.60. In addition, Household Finance holds a third mortgage encumbering the debtors' home in the amount of $26,503.36. Because the value of the home, as asserted by the debtors, was less than the balance due on SunTrust's first mortgage, the debtors intend to value SunTrust's second mortgage and Household Finance's third mortgage at zero and extinguish, or strip off, the respective liens pursuant to *In re Tanner*, 217 F.3d 1357 (11th Cir.2000). Consistent with this intention, the debtors filed an Objection to SunTrust's Proof of Claim (Doc. No. 16) and an Amended Motion for Valuation of Homestead Property and Strip Off of SunTrust's Lien (Doc. No. 25).

In response, SunTrust filed an Objection (Doc. No. 22) to the Motion for Valuation and Strip Off, an Objection to the debtors' Objection to Proof of Claim (Doc. No. 23), and a Motion for Relief from Stay (Doc. No. 26). In all of these pleadings, SunTrust argued that both its first and second mortgages were secured, at least in part, because the debtors' valuation of the home was inaccurate. SunTrust asserts the actual value of the home is $127,640, an amount in excess of the combined balance due under all three mortgages encumbering the property. Therefore, SunTrust argues that the debtors cannot strip off the second or third mortgage because the mortgages are fully secured and that SunTrust is entitled to payment under the debtors' Chapter 13 plan, or in the alterna-

tive, to enforce its rights under the second mortgage. A separate evidentiary hearing is needed to resolve these disputed valuation issues.[1]

However, at the preliminary hearing on the Motion for Relief from Stay, SunTrust also objected to the debtors' valuation motion on procedural grounds. SunTrust argued that the debtors could not strip off its second mortgage by motion. Rather, Bankruptcy Rule 7001(2) required the debtors to institute an adversary proceeding. The debtors then filed their Motion for Clarification, arguing that a motion to value was procedurally sufficient. This opinion only addresses this one issue: can a debtor value a claim arising from an unsecured mortgage encumbering a homestead by motion or is an adversary proceeding required?

Section 506 of the Bankruptcy Code[2] allows a debtor to value a claim to determine if the claim is secured or unsecured and to declare void a lien for a totally unsecured claim. Section 506(a) provides that collateral, which secures an allowed claim, may be valued to ascertain what portion of the claim is secured and what portion is unsecured. To the extent the lien exceeds the amount of the allowed secured claim, Section 506(d) provides that the lien is void.

■ Bankruptcy Rule 3012 specifically permits 506(a) collateral valuations to be requested on motion provided notice and an opportunity for hearing is given to the affected party. Fed. R. Bankr.P. 3012. Although the rule does not specifically address whether an adversary proceeding is needed to extinguish an unsecured lien

under 506(d), the Official Committee Notes provide some guidance:

> An adversary proceeding is commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001. *That proceeding is relevant to the basis of the lien itself* while valuation under Rule 3012 would be for the purposes indicated above [e.g., to determine the issue of adequate protection, impairment, or treatment of a claim in a plan.]

11 U.S.C. § 506 advisory committee's notes. Interpreting this comment, it appears that an adversary proceeding is only needed when the basis of the lien itself is in dispute and that no adversary proceeding is needed simply to value and to declare void a totally unsecured claim. Developing case law supports this conclusion.

The bankruptcy rules create two different types of proceedings for resolving disputes—contested matters and adversary proceedings—presumably because the drafters of the rules deemed certain matters of sufficient consequence to the affected party that the party deserved something more than a motion and an accelerated hearing. In reality, the differences often are blurred.

In a contested matter, the creditor receives a motion. Typically, no filing fee is required. Because many contested motions are not opposed, the responding party is given an opportunity to file a response or objection within a certain period of time. If a response is filed, the court will set a hearing. Often, the creditor will not dispute the relief requested in the motion, files no response, and the motion is granted upon notice but without the need for any hearing after the response period

---

1. The parties later consensually resolved these disputed valuation issues. After substantial modifications, the debtors' Chapter 13 Plan was confirmed on May 14, 2003 (Doc. No. 57).

2. 11 U.S.C. § 506. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

passes. The process provides due process in a streamlined and efficient manner.

In contrast, in an adversary proceeding, the debtor must file and formally serve a complaint upon the creditor, which identifies the party that is the object of the debtor's action, the specific relief sought, and the basis for such relief. Fed. R. Bankr.P. 7003 and 7008. Filing fees associated with adversary proceedings are substantial. Additionally, the debtor must serve a summons accompanied with the complaint directed to the named defendant which states, among other things, that if the party does not appear and defend, a judgment for the relief sought will be entered against it. Fed. R. Bankr.P. 7004. Clearly, an adversary proceeding is more formal, takes longer, and is more costly.

With this structure in mind, all courts permit collateral valuation by motion as permitted by Bankruptcy Rule 3012. The majority of courts that have analyzed whether a motion or adversary proceeding is necessary to strip off an unsecured mortgage also have held that the appropriate procedure for collateral valuation is by motion. However, there is a split among courts as to whether an adversary proceeding is required under Bankruptcy Rule 7001(2) to declare a lien void if the collateral is valued at zero. The minority of courts have held that an adversary proceeding is required because, in order to declare a lien void, the court necessarily must determine the validity, priority, or extent of the lien.

The majority of courts hold that the appropriate procedure for lien avoidance under Section 506 is by motion because lien avoidance is the inevitable byproduct of valuing a claim, which is accomplished by motion pursuant to Bankruptcy Rule

3012. No further proceeding is required. *In re Hoskins,* 262 B.R. 693 (Bankr. E.D.Mich.2001); *In re Fuller, Jr.,* 255 B.R. 300 (Bankr.W.D.Mich.2000); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich.1993); *Lee Servicing Co. v. Wolf (In re Wolf),* 162 B.R. 98 (Bankr.D.N.J.1993). Once the value of the secured claim is determined, the attendant lien is stripped off automatically under Section 506(d).

For instance, in *In re Hoskins,* the bankruptcy court held that a Chapter 13 debtor was not required to bring an adversary proceeding in connection with stripping off a second unsecured mortgage because merely extinguishing the lien did not involve a determination of the validity, priority, or extent of the mortgage.[3] The bankruptcy court defined the terms "validity," "priority" and "extent" to demonstrate that these matters were not implicated when all the debtor was asking the court to do was to value the secured creditor's collateral. *Hoskins,* at 697 (citing *In re Hudson,* 260 B.R. 421, 433 (Bankr. W.D.Mich.2001)). In defining the terms, the court opined that "validity" referred to whether the lien was enforceable. *Id.* "Priority" referred to the rank held by the mortgage in relation to other claims attached to the same property. *Id.* "Extent" referred to the identification of the scope of specific property that is the subject of the lien. *Id.* The court found that these matters were not in dispute, only the value of collateral. Therefore, the debtor could both value and strip off the unsecured lien by motion. No adversary proceeding was needed.

Similarly, in *In re Jones,* the bankruptcy court held that a Chapter 13 debtor was not required to bring an adversary pro-

**3.** *In re Hoskins,* 262 B.R. 693 (Bankr. E.D.Mich.2001). *See also In re Fuller,* 255 B.R. 300 (Bankr.W.D.Mich.2000); *Lee Servic-* *ing Co. v. Wolf (In re Wolf),* 162 B.R. 98 (Bankr.D.N.J.1993).

ceeding to strip off a second unsecured mortgage because the validity, priority, or extent of the mortgage was not at issue. *In re Jones,* 152 B.R. 155 (Bankr. E.D.Mich.1993). Rather, the appropriate procedure to strip off an unsecured, but acknowledged, lien was by motion as prescribed by Bankruptcy Rule 3012. *Id.* at 162. The court found that Bankruptcy Rule 3012 expressly permitted Section 506 valuations to be requested by motion, and, only if the "validity," "priority," or "extent" of the mortgage itself is at issue was an adversary proceeding necessary. *Id.* at 161. The debtors did not dispute the enforceability, priority, or scope of the mortgage. The debtors only disputed the extent to which the claims of the mortgage holder were secured. *Id.* Therefore, the debtors were not required to commence an adversary proceeding to invoke Section 506(d). The debtors only had to file a motion to value collateral pursuant to Bankruptcy Rule 3012.

Other courts find that extinguishing a lien is *not* a purely mechanical byproduct incidental to valuing the creditor's interest in the property. These jurisdictions hold that, although a debtor may value a claim by motion, the appropriate procedure for lien avoidance is by adversary proceeding. These courts find that lien avoidance necessarily entails a determination of the validity, priority, or extent of the lien. The resolution of such matters must be accomplished through an adversary proceeding as prescribed by Bankruptcy Rule 7001(2). Fed. R. Bankr.P. 7001(2); *In re Enriquez,* 244 B.R. 156 (Bankr.S.D.Cal.2000); *In re Crestwood Co.,* 127 B.R. 213 (Bankr. E.D.Ark.1991). However, in closely reviewing these decisions, the seminal cases relied upon by these courts all involved situations where the debtor did more than just value the collateral. The debtors actually contested the validity, extent, or priority of the underlying security interest.

For example, the bankruptcy court in *In re Enriquez,* following the Ninth Circuit Court of Appeals decision in *Andrew v. Commercial Western Finance Corp.,* required the Chapter 13 debtors to commence an adversary proceeding to strip off a second unsecured mortgage. *In re Enriquez,* 244 B.R. 156, 158 (Bankr.S.D.Cal. 2000) (citing *Andrew v. Commercial Western Finance Corp. (In re Commercial Western Finance Corp.),* 761 F.2d 1329 (9th Cir.1985)). However, the dispute in *Commercial Western* involved much more than merely valuing collateral.

In *Commercial Western,* the Ninth Circuit Court of Appeals required the trustee to institute an adversary proceeding against investors whose security interests the trustee wished to avoid pursuant to Section 544 of the Bankruptcy Code. *Commercial Western,* at 1336. The Ninth Circuit found that the validity of the liens were at issue because the trustee sought to avoid deeds of trust based on the fact that the deeds were not enforceable at law. Therefore, in that case, the trustee disputed the underlying validity of the investors' deeds, not just the value of the encumbered collateral. Clearly, an adversary proceeding is required by Bankruptcy Rule 7001 to resolve that dispute. However, the ruling in *Commercial Western* simply does not require the further extension, as adopted by the court in *Enriquez,* that an adversary proceeding is necessary for normal valuation and strip off matters raised under Section 506, when the *only* issue is the value of the encumbered collateral. No reason exists to impose this level of complexity on a relatively uncomplicated issue that bankruptcy courts determine daily—how much property is worth.

Similarly, the bankruptcy court in *In re Crestwood Company,* relying upon *In re Beard,* required Chapter 11 debtors to in-

stitute an adversary proceeding to strip off a second unsecured mortgage. *In re Crestwood Co.*, 127 B.R. 213 (Bankr.E.D.Ark.1991)(citing *In re Beard*, 112 B.R. 951 (Bankr.N.D.Ind.1990)). But again, the issues resolved in *Beard* involved more than merely valuing collateral. In *Beard*, the bankruptcy court required the debtor to institute an adversary proceeding to strip off a tax lien attached to her home because the debtor challenged the scope of the property encompassed by the lien. *In re Beard*, 112 B.R. 951. This involved a determination of the extent of the lien itself. By challenging the extent of the lien, the debtor was challenging the basis of the lien itself. *Id.* at 955. An adversary proceeding clearly was appropriate. But, just as in *Enriquez*, no justification exists to extend this reasoning to cases, like this one, where the only dispute is the value of the underlying collateral and no dispute exists as to the underlying basis of the lien itself.

In the seminal cases requiring an adversary proceeding, *Beard* and *Commercial Western*, the parties clearly disputed the validity, priority, or extent of the underlying lien. Further, in the cases permitting strip off by motion, *Hoskins* and *Jones*, the parties do not dispute the validity or priority of the lien but seek only the valuation of the collateral and the related extinguishment of the totally unsecured mortgage. In those circumstances, the Official Comments to Bankruptcy Rule 3012 indicates that a motion is appropriate, *unless* the dispute between the parties raises an issue as to the validity, priority, or extent of the lien.

The Court adopts this line of authority and holds that a party moving to value collateral and to void an unsecured lien under Section 506 of the Bankruptcy Code may do so by motion, unless the dispute involves a determination of the validity, priority, or extent of the underlying lien. In that case, an adversary proceeding is needed. If the court values the security interest at zero, the lien shall be declared void, or "stripped off," pursuant to Section 506(d) without further litigation. However, because so many Chapter 13 cases fail and because it would be inappropriate to strip off a lien in a case where the debtor later defaults and no discharge is granted, special rules are needed to specify when the lien actually is extinguished.

■ To protect creditor's interests in the event a debtor defaults in payments under a Chapter 13 plan before the conclusion of his or her case, the Court will treat any secured claim valued at zero as an unsecured claim during the Chapter 13 case. If the debtor completes all required payments and receives a discharge, then the lien related to this unsecured claim shall be declared void upon the entry of the discharge. The order confirming the debtor's Chapter 13 plan or order granting the motion to value can provide for this treatment and the automatic extinguishment of the lien upon the entry of the discharge.

In conclusion, the Court grants the debtors' Motion for Clarification (Doc. No. 39). Parties may value collateral and strip off liens by motion, unless the dispute involves the determination of the validity, priority, or extent of the underlying lien. Moreover, the creditor's claim shall be treated as an unsecured claim by the Chapter 13 case and the actual extinguishment of any lien declared void in a Chapter 13 case shall be deferred until a discharge is entered or upon further court order, in exceptional circumstances. SunTrust's Motion for Relief from Stay (Doc. No. 26) is denied.